## OKLAHOMA RY. CO. et al. v. BERNARD et al.

### No. 22912. Oct. 23, 1934.

W. H. Brown, Municipal Counselor, A. P. Van Meter, Asst. Municipal Counselor, and Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiffs in error.

Nowlin, Spielman & Thomas and John R. Guyer, for defendants in error.

RILEY, C. J. This action was commenced by R. H. Bernard, now deceased, and was later revived in the name of Lida E. Bernard et al., the heirs and successors of R. H. Bernard.

The action is for the recovery of damages caused by the overflow of certain land owned by the plaintiff, consisting of some 247 acres, and the petition alleges that the injuries resulting in the damages sued for were caused by the negligent construction of a certain embankment, the same as that involved in the cause of Oklahoma Ry. Co. et al. v. Boyd, 140 Okla. 45, 282 P. 157. The parties herein agreed to be bound by the decision in that case on the question of liability, and to leave open only the issue as to the amount of damages in case liability of defendant in the Boyd Case should be adjudged.

After the decision in the Boyd Case, this case was tried to a jury on the sole question of the amount of damages. The verdict and judgment in the trial court was

for plaintiff in the sum of $18,000, and defendants appeal.

The alleged errors complained of go chiefly to the admission of certain evidence and the instructions of the court going to the measure of damages.

Plaintiff pleaded three elements of damages, alleging, in substance, that by reason of the alleged negligent acts of defendants, some 900 bushels of wheat, of the value of $1 per bushel, was destroyed in the flood of June, 1923, and in the October, 1923, flood about 900 bales of Alfalfa hay, worth $585, were destroyed; that after the flood waters of the June rise receded from his farm, defendants, though aware that in changing the channel of the river and constructing the embankment and bridge the opening left or provided in the embankment was wholly insufficient to allow the flood water to flow through without backing water up and over plaintiff's land, wholly failed to make any change therein and failed to make any attempt whatever to remedy the condition, and that plaintiff himself was powerless to prevent a recurrence of the flood; that when the October flood came, plaintiff's land was again covered with water to the depth of from four to six feet, when a break in the embankment occurred, causing the water to recede rapidly from his farm whereby great ditches and excavations were washed in his land, a part of his orchard was washed away, and outbuildings were moved and the ground under them was washed away, causing a depreciation in the market value of his land to the extent of $10,000; that prior to the overflow of his land, so caused, the farm being located in the high or second bottom of the North Canadian river, had the reputation of being, and was in fact, a farm that did not and had never overflowed; that thereafter and because of the overflows, the beauty of said farm was greatly marred and it had the reputation of being a farm subject to overflow, and by reason thereof the value of the farm had been reduced from $62,000 to $31,000. He sued for damages in the sum of $42,485. In other words, he pleaded damages by way of loss of personal property, in crops, in the sum of $1,485, damages on account of actual or physical injury to the land itself, permanent in character to the extent of $10,000, and the alleged diminution of the market value of said farm caused by the change in reputation of the farm from that of one not being subject to overflow to that of one being subject to overflow to the extent of $31,000.

The court permitted plaintiffs to introduce evidence over the objection of defendants tending to show that the market value of the land in question decreased by reason of the actual washing away of the part of the land, and also that such value decreased by reason of the change in reputation of the farm as stated above.

The court instructed the jury as to the measure of damages to the land:

"You are further instructed that the measure of damages in this case as to the land is the difference between the fair market value of said lands immediately prior to the flood of October, 1923, and the fair market value of said lands immediately thereafter, if any, but in no event the whole of plaintiff's recovery for damages, both to the crops and to the land, to exceed the sum of $42,485."

As to the measure of damages on account of loss of the wheat and alfalfa, there appears to be no contention as to the correctness of the instruction given.

It is first contended that:

"Before damages for a permanent injury can be recovered for an overflowing of land, it is necessary to prove that the cause of the injury is permanent in character and not removable by the expenditure of labor or money, or that the injury itself is permanent."

As to the injury which is by its very nature permanent, viz., the destruction or washing away of a part of the land and its effect on the farm as a whole, plaintiff was clearly entitled to recover to the extent of $10,000, and no more. We say no more because in the pleading this is the extent of the damage alleged to have been caused by that particular injury.

Plaintiff is clearly entitled to recover as to this element of damage whether the cause thereof, the structure giving rise to or causing the overflow, be permanent or temporary. Okla. City v. Page, 153 Okla. 285, 6 P. (2d) 1033; Okla. City v. West, 155 Okla. 63, 7 P. (2d) 888.

In these cases it is clearly pointed out that, though the act of nuisance causing the injury may be temporary, the injury may be permanent, and where this is the case the proper measure of damages is the difference between the market value of the property, if it be real property, before and after the injury.

The other elements of damages pleaded, viz., the effect of the two overflows of the land on the reputation of the farm relative

to its being or not being subject to overflow, presents a somewhat different and more difficult question. No case is cited holding that damages are recoverable for injury to the reputation, that is, the general reputation of farm lands, either as being land subject or not subject to overflow, fertile and productive or nonfertile and nonproductive, much less one holding that such injury may or may not constitute a permanent injury.

There was objection to the introduction of evidence tending to show this element of damages, it being asserted that it was not a proper element. Defendants contend that as to this element it was error to instruct the jury, as was done, that the measure of damages as to the land for both elements was the difference between the market value of the land immediately before the flood of October, 1923, and the fair market value immediately thereafter. The question then is: Is such injury to be considered permanent or . temporary? In determining the question whether the proper rule as to the measure . of this element of damages it must be borne in mind that the claim of plaintiff as to this element is not predicated upon any injury to the soil, for that is fully covered in the other element above referred to, but is simply that the land will sell for less than it would, not because it has been permanently rendered subject to overflow, but because it has attained that reputation. Now this reputation may or may not remain permanent, for by the very nature of the cause of the injury it is apparent that the obstruction to the drainage can be easily removed by the expenditure of money and labor. by simply providing more space in the embankment for the escape of the water in case of future floods. In fact, there is some evidence tending to show that this has already been done, or was accomplished by the action of the flood water in the October, 1923, flood. For the evidence shows that the very cause of the washing away of a part of the soil was caused by the water washing away part of the embankment, thus causing the water then upon plaintiff's land to recede rapidly, thereby washing the soil and cutting out ditches and excavations complained of as constituting the permanent injury to the land itself. It is asserted and not denied that the part of the embankment so washed out was never put back and the space now constitutes a part of the opening through which flood waters may pass. It is also in evidence that plaintiff's land has never overflowed since October, 1923, to the date of trial, February. 1931.

It is fair to assume that the farm will regain its former status, that is, that in reputation as well as in fact it does not overflow.

There is no evidence whatever that plaintiffs suffered any actual loss on account of the reputation of the farm as being one subject to overflow. No one testified of any loss of an opportunity to make a sale of the land because of such reputation. The damage claimed on this ground is more imaginary than real, and so far as the future is concerned is purely speculative. If we hold this element of damage is permanent, we must base the holding, in part at least, on a liability of overflow of the land in the future, which may or may not occur. We must treat the reputation the land had at the time of the trial as being permanent, perpetual, and unchangeable, and this whether the cause giving rise to the reputation be permanent or temporary.

In every case called to our attention, save one, where the injury was caused by obstruction of the natural flow of water by the construction of embankments or providing insufficient space for the passage of flood water, where there was no actual physical injury to or washing away of the soil, the measure of damage is held not to be the amount of depreciation of the value of the land caused by such injury, except in cases where the structure, or nuisance, as it is sometimes called, causing the injury is such as by its nature must be permanent and the cause of the injury cannot be abated by the expenditure of money and labor. Gulf, etc., Ry. Co. v. Haskell (Tex. Civ. App.) 23 S. W. 546; Van Pelt v. City of Davenport, 42 Iowa, 308; K. C.-Ft. S. & M. R. Co. v. Cook (Ark.) 21 S. W. 1066.

Many other cases to the same effect might be cited. One case holding to the contrary is that of Harvey v. Mason City & Ft. D. R. Co. (Iowa) 105 N. W. 958, 3 L. R. A. (N. S.) 977. But it is stated in the opinion that the measure there approved was not in accord with the rule generally applied by other courts.

The rule generally held to be the more just is that, unless destruction or washing away of the land is shown, the amount of recovery should be based upon the injury to the use and occupancy or rental value together with such special damages by way of injury to crop or personal property as may be shown, subject, of course, to the further rule that where the structure or nuisance causing the

injury is by its nature permanent and not subject to abatement, the measure of damage is the same as where destruction or washing away of the land is caused.

Counsel have not in their briefs attempted to separately discuss the two elements of damage claimed.

Counsel for plaintiff take the position that both injuries, actual destruction and washing away of the land, and change in the general reputation of the land from that as not being subject to overflow to that of being subject thereto, are permanent in character, and therefore the correct measure of damage for both injuries complained of is the difference between the fair market value before and after the alleged injuries. Counsel for defendant take the position that because the cause of the injury is and was shown to be removable or subject to abatement, if not already abated, no damages whatever are recoverable for either class of injury complained of.

We take the view that neither position is correct.

The trial court adopted the view of counsel for plaintiff and instructed the jury in a single instruction that the measure of damage for both elements of damage would be the difference between the fair market value immediately before the flood of October, 1923, and immediately thereafter. In this there was error as to the element affecting the reputation of the land.

There is abundant evidence to support the verdict and judgment as to the damage to the wheat and alfalfa to the extent of $1,440, and as to the land by reason of the destruction or washing away of a part thereof up to the amount claimed on this account, viz., $10,000, in all $11,440. The evidence as supporting these two elements is entirely uncontradicted. Defendants offered no evidence whatever to refute that of plaintiffs. We would be inclined to approve the judgment regardless of the error in the instruction if it did not exceed the sum of $11,440, but cannot affirm the judgment as it stands. If plaintiffs will, within 20 days from this date, file a remittitur in the sum of $6,560, the judgment will be affirmed, otherwise the judgment will be reversed and the cause remanded for a new trial.

SWINDALL, McNEILL, BAYLESS, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS, OSBORN, and WELCH, JJ., absent.